# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

    v.                                    Case No. 18-CR-128

**RON L. JONES,**

    Defendant.

## ORDER DENYING DEFENDANT'S REQUEST FOR *FRANKS* HEARING AND REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

In February 2018, a felon shot and killed a Chicago police commander with a Glock handgun that had been purchased by Thomas Caldwell, a suspected unlicensed firearm dealer, back in March 2015. Federal agents questioned Mr. Caldwell the day after the shooting, and Caldwell fingered Ron L. Jones as the person he believed he sold the Glock to. The following day, Mr. Jones admitted to agents that he had acquired firearms from Mr. Caldwell, but he didn't remember whether he had ever possessed the gun in question.

Using this information, agents obtained a warrant and seized firearms, marijuana, and electronic devices from Mr. Jones's residence. The electronic devices were examined pursuant to a second search warrant. A few months later, after Mr. Jones had sold marijuana and firearms to a confidential informant, agents obtained

another warrant to search Jones's residence. Based in part on evidence recovered during those searches, Mr. Jones was charged with possessing a firearm while unlawfully using marijuana and distributing a controlled substance.

Mr. Jones has moved to suppress all evidence taken from his residence and derived from the search of his electronic devices, arguing that the search warrants were facially invalid and that the affidavits submitted in support of them contained material omissions, which, if included, would have caused the issuing judge to deny the warrant requests. He seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to explore the validity of the search-warrant affidavits. The government opposes the motion.

Because Mr. Jones has failed to make a substantial preliminary showing that the searches were unlawful under *Franks*, he is not entitled to a hearing to challenge the veracity of the affidavits that law enforcement used to procure the warrants. Moreover, the totality of the circumstances demonstrate that the issuing judge had a substantial basis for concluding that the search-warrant affidavits established the requisite probable cause for a warrant. The Court will therefore recommend that Mr. Jones's motion to suppress be denied.

## I. Background

On February 13, 2018, Paul R. Bauer, a Commander with the Chicago Police Department, was shot and killed in downtown Chicago. *See* Attachment I to Defendant's Memorandum in Support of Motion to Suppress Physical Evidence ¶ 10, ECF No. 30-1. Law enforcement learned that the original purchaser of the

murder weapon, a 9 mm Glock handgun with serial number RHL631, had sold the gun to Thomas Caldwell in March 2015. *Id.*

Mr. Caldwell was known to the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives. In December 2015, ATF served Ms. Caldwell with a written "Warning Notice of Unlicensed Firearms Dealing in Violation of Federal Law." *Id.* ¶ 8. Undeterred by the warning letter, Mr. Caldwell continued to purchase and sell firearms without a license, several of which were used to commit crimes shortly after purchase. *Id.* ¶ 9. Accordingly, in November 2017, ATF began investigating Mr. Caldwell for unlicensed firearm sales. *Id.* ¶ 8.

On February 14, 2018, the day after the fatal shooting of Commander Bauer, an ATF task force officer interviewed Mr. Caldwell at his home in Madison, Wisconsin. *Id.* ¶ 11. Mr. Caldwell indicated that he "probably" sold the 9 mm Glock to an individual he knew as "Kevin Sweepee" and who also went by "Ron." *Id.* ¶ 12. Mr. Caldwell subsequently identified Ron L. Jones as Kevin Sweepee; he claimed to have sold Mr. Jones at least fifteen guns in the last five years. *Id.* He also provided ATF with Mr. Jones's telephone number. *Id.*

Later that day, law enforcement officers attempted to talk to Mr. Jones at his known address on 39th Street in the City of Milwaukee. *See id.* ¶¶ 13, 15. Mr. Jones spoke to officers from the residence's upper balcony. *See id.* ¶ 13. When officers asked Mr. Jones if he knew Mr. Caldwell and had purchased firearms from him, Jones responding by asking, "Which gun?" *Id.* Mr. Jones then told officers that he would talk to them the following day. Prior to leaving the area, agents contacted

3

Mr. Jones at the number provided by Mr. Caldwell; Mr. Jones agreed to contact law enforcement at about 9:00 a.m. the following day. *Id.*

The next day, February 15, 2018, Mr. Jones called law enforcement and agreed to meet agents at a local police station. *Id.* ¶ 14. At the station, Mr. Jones admitted to acquiring firearms from Mr. Caldwell, including at least one Glock handgun, but he didn't recall the model or caliber of that firearm. *Id.* Mr. Jones indicated that he likely sold the Glock handgun on "www.armslist.com," a classified advertisements website commonly used to deal firearms. *Id.* Mr. Jones also described Mr. Caldwell's residence (which was consistent with the residence agents had visited the prior day) and stated that he spoke with Mr. Caldwell over the phone about three times per month regarding firearms. *Id.*

On February 16, 2018, law enforcement officers obtained a warrant to search Mr. Jones's residence for evidence relating to the unlawful sale of firearms. *See* Search and Seizure Warrant, ECF No. 30-1 at 11–13. The warrant was executed a few hours later, and officers seized (among other things) about 40 firearms, over 7,000 rounds of ammunition, marijuana, and several electronic devices. *See* Search Warrant Return, ECF No. 2 in Case No. 18-MJ-31; *see also* Attachment III to Def.'s Mem. ¶ 24, ECF No. 30-3. Mr. Jones was present during the warrant's execution. *See* Def.'s Mem. Attach. III, ¶ 24. He confirmed living at the residence and explained that he didn't answer the door on February 14 because he had a "blunt" in his mouth when agents arrived. *Id.*

A week later, law enforcement officers obtained and executed a warrant to search the seized electronic devices. *See generally* Attachment II to Def.'s Mem., ECF No. 30-2; *see also* Search Warrant Return, ECF No. 2 in Case No. 18-MJ-38.

In March 2018, law enforcement began working with a confidential informant who claimed to have sold marijuana to Mr. Jones on more than five occasions between 2015 and 2017. *See* Def.'s Mem. Attach. III, ¶¶ 26, 28. The informant also claimed that, during those two years, he/she acted as a "middleman" for Mr. Jones in selling multiple firearms. *Id.* ¶ 29. At the direction of law enforcement, the informant conducted controlled buys from Mr. Jones on April 10 (firearm), April 20 (marijuana), May 16 (firearm), and May 30 (marijuana). *See id.* ¶¶ 25–35.

On June 5, 2018, law enforcement officers executed another warrant at Mr. Jones's residence, this time looking for evidence relating to the distribution of controlled substances, the unlawful sale of firearms, and the possession of a firearm as a prohibited person. *See* Search Warrant Return, ECF No. 2 in Case No. 18-MJ-846. They seized a tablet computer, marijuana, drug paraphernalia, and $8,900 in cash. *See id.*

On June 12, 2018, Mr. Jones was indicted in the Eastern District of Wisconsin for possessing a firearm as an unlawful user of marijuana in violation of 18 U.S.C. § 922(g)(3) and two counts of distributing marijuana in violation of 21 U.S.C. § 841(a)(1). *See* Indictment, ECF No. 1. The matter is assigned to United States District Judge Lynn Adelman for trial and to this Court for resolving pretrial

motions. *See* 28 U.S.C. § 636; Fed. R. Crim. P. 59; E.D. Wis. Gen. L. R. 72. The trial date has been adjourned.

On December 5, 2018, Mr. Jones filed a motion seeking an order compelling the government to obtain and disclose law enforcement records relating to the Chicago homicide investigation, as well as Mr. Caldwell's medical records. *See* Defendant's Motion to Compel Discovery, ECF No. 26. The Court denied the motion, *see* Order Denying Defendant's Motion to Compel Discovery, ECF No. 41, and Judge Adelman affirmed that ruling, *see* Decision and Order, ECF No. 48.

On January 11, 2019, Mr. Jones filed a motion to suppress evidence and a request for a *Franks* hearing. *See* Defendant's Motion to Suppress Physical Evidence, ECF No. 29; Defendant's Memorandum in Support of Motion to Suppress Physical Evidence, ECF No. 30. Briefing on the suppression motion was stayed pending resolution of the discovery motion. *See* Text Only Order, ECF No. 32. After Judge Adelman affirmed the denial of the discovery motion, the government filed its opposition to the suppression motion and request for a hearing. *See* Response to Defendant's Motion for a *Franks* Hearing and to Suppress Evidence, ECF No. 51. Mr. Jones elected not to file a reply brief. *See* Defendant's letter, ECF No. 52.

## II. Discussion

Mr. Jones argues that the warrants to search his residence and electronic devices are invalid because they were based on affidavits that recklessly omitted material information and that failed to establish probable cause. He requests a *Franks* hearing to prove the invalidity of the warrants and, ultimately, an order

6

suppressing all evidence recovered and derived from those searches.

### A. Applicable law

#### 1. *Franks v. Delaware*

A defendant is entitled to a *Franks* hearing only if he makes a "'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155–56)). This standard "also applies to deliberately or recklessly deceptive omissions." *See United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) (citing *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006)).

"*Franks* makes it clear that affidavits supporting a search warrant are presumed valid, and that the 'substantial preliminary showing' that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant"—that is, the law enforcement officer who sought the search warrant. *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (citing *Franks*, 438 U.S. at 171). The inquiry is "not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false." *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (citing *Jones*, 208 F.3d at 603).

Consequently, "[t]he defendant must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth

7

because he 'in fact entertained serious doubts as to the truth of his allegations' or had 'obvious reasons to doubt the veracity of the allegations.'" *Jones*, 208 F.3d at 607 (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)). To meet this "substantial" burden, the defendant must make allegations, accompanied by an offer of proof, that are "more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "[T]he defendant must also show that if the deliberately or recklessly false statements were omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent." *McMurtrey*, 704 F.3d at 509 (citing *Franks*, 438 U.S. at 171–72). Accordingly, "*Franks* hearings are rarely required." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (citing *Maro*, 272 F.3d at 821).

### 2. Probable Cause

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). "A search warrant affidavit establishes probable cause when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime.'" *Jones*, 208 F.3d at 608 (quoting *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)).

In deciding whether an affidavit establishes probable cause, "courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462

U.S. 213, 238 . . . (1983)." *McNeese*, 901 F.2d at 592. Applying the totality-of-the-circumstances standard, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Id.* at 232. Thus, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175 (1949). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir. 1980).

Where an affidavit submitted in support of a search warrant relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's "reliability, veracity and basis of knowledge." *United States v. Johnson*, 289 F.3d 1034, 1038 (7th Cir. 2002). This inquiry involves balancing several "primary factors . . . along with other pertinent concerns," including: (1) the amount of detail provided; (2) the extent to which the information is based on the informant's personal observations; (3) the degree of police corroboration of the informant's statements; (4) the interval of time between the events and the warrant application; and (5) whether the informant personally

9

appeared before the warrant-issuing judge to present the affidavit or testimony. *See United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014) (citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011)). "No one factor is dispositive, so a deficiency in some areas can be compensated by a stronger showing in others." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009) (citing *United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006)).

The court's duty in reviewing a search warrant and its supporting materials is limited to ensuring "that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In other words,

> a magistrate's determination of probable cause is to be "given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated."

*United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984) (quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). Even "doubtful cases should be resolved in favor of upholding the warrant." *Rambis*, 686 F.2d at 622 (citations omitted).

### B. Analysis

Mr. Jones argues that the affidavit for the first search warrant omitted material information about Mr. Caldwell, which, if included, would have so detracted from his credibility that the issuing judicial officer would have denied the warrant request. Specifically, he maintains that the affidavit failed to disclose that

10

Mr. Caldwell had no records of the alleged sale to Mr. Jones, that Mr. Jones continued to sell firearms without a license after the ATF's warning letter, that Mr. Caldwell suffered from mental-health issues and an addiction to firearms, and that Mr. Caldwell initially told law enforcement agents that he had sold the gun in question to a man named Phil. According to Mr. Jones, the second and third warrants are tainted fruit of the initial warrant because they bootstrapped the Caldwell information and relied on evidence and information derived from that unlawful search. *See* Def.'s Mem. at 7–10.

The above allegations are insufficient to satisfy the substantial preliminary showing under *Franks*. *First*, the warrant affidavits did not omit any material information concerning Mr. Caldwell's alleged illegal firearms dealing. The affidavits stated that in November 2017, ATF opened an investigation into illegal firearms sales by Mr. Caldwell. *See* Def.'s Mem. Attach. I, ¶ 8. The affidavits explained that ATF had served Mr. Caldwell with a warning letter in December 2015, but Caldwell continued to sell firearms without a federal license, and six firearms he sold between March 2014 and September 2017 were used to commit crimes shortly after purchase. *See id.* ¶¶ 8–9. Although the details of those crimes were not divulged, the affidavits clearly set forth Mr. Caldwell's alleged criminal activity.[1]

---

[1] Mr. Caldwell eventually received a target letter from the U.S. Attorney's Office, was charged with selling firearms without a license, and pled guilty to that offense. *See United States v. Caldwell*, Case No. 3:18-cr-00114-jdp-1 (W.D. Wis.). However, these events transpired *after* law enforcement obtained the first warrant to search Mr. Jones's residence.

11

*Second*, Mr. Jones has failed to offer any evidence that the affiant deliberately or recklessly omitted material information from the search-warrant affidavits. Mr. Jones claims that officers "presumably" knew that Mr. Caldwell "was an impaired psychiatric patient whose memory was aberated [sic] and unreliable." Def.'s Mem. at 9. As support, he cites Mr. Caldwell's plea colloquy, during which Caldwell apparently claimed to be a life-long schizophrenic and to have suffered from memory loss. *See id.* However, Mr. Jones acknowledges that the colloquy took place *after* the warrants were issued to search his residence and electronic devices. There is no evidence in the record that law enforcement was aware of Mr. Caldwell's mental-health deficits at the time they applied for the warrants. If anything, the record shows that Mr. Caldwell had sufficient mental capacity to enter a knowing and voluntary guilty plea to federal weapons charges in September 2018, a mental capacity that was never challenged. *See, e.g.*, Stenographic Transcript of Plea Hearing, ECF No. 14 in Case No. 18-cr-114 (W.D. Wis.) Mr. Jones has not offered any other evidence on the affiant's state of mind.

*Third*, including the omitted information in the affidavits would not affect the probable-cause determination. Mr. Caldwell claimed that he met Mr. Jones—whom he knew as "Kevin Sweepee"—through armslist.com and that he sold Jones at least fifteen firearms between 2013 and 2018. *See* Def.'s Mem. Attach. I, ¶ 12. Mr. Caldwell was shown a photograph of Mr. Jones, and he confirmed that Jones was the person to whom he had sold multiple firearms. *Id.* Mr. Caldwell also provided law enforcement with a telephone number for Mr. Jones. *Id.*

The search-warrant affidavits established that Mr. Caldwell's information was reliable, notwithstanding his own legal troubles and claimed mental-health issues (including his "fascination" with firearms). The information provided by Mr. Caldwell was largely corroborated by Mr. Jones's own statements to law enforcement. Officers spoke with Mr. Jones the day after they talked to Mr. Caldwell. Mr. Jones admitted that he met Mr. Caldwell via armslist.com and that he acquired firearms from him. *See* Def.'s Mem. Attach. I, ¶ 14. Mr. Jones accurately described Mr. Caldwell's residence and told officers that the two men spoke on the phone about firearms approximately three times per month. *Id.* Officers also confirmed Mr. Jones's phone number. *See id.* ¶ 13.

Mr. Jones contends that law enforcement did not corroborate Mr. Caldwell's assertions that he sold Jones the Glock handgun used to kill Commander Bauer or that Jones was an unlicensed firearm dealer. Def.'s Mem. at 9. True. But the affidavits claimed that law enforcement merely suspected that the murder weapon may have been purchased by Mr. Jones, not that it certainly would be found in his house. *See* Def.'s Mem. Attach. I, ¶¶ 12, 14, 17. Thus, it's immaterial that Mr. Caldwell didn't have records of the sale, relied on his own memory, and initially claimed to have sold that gun to someone other than Mr. Jones. Moreover, the affidavits clearly stated that Mr. Caldwell was the alleged unlicensed firearm dealer, not Mr. Jones. *See id.* ¶ 17.

Mr. Jones also contends that the search-warrant affidavits were facially deficient with or without the omitted information. The Court disagrees. The

13

affidavits established that Mr. Jones was acquiring firearms from Mr. Caldwell and that Caldwell did not possess a federal firearms license. *See* Def.'s Mem. Attach. I, ¶¶ 8, 12, 14. Law enforcement officers also spoke with Mr. Jones at the 39th Street address, *see id.* ¶ 13, and public records revealed that was Jones's residence at the time, *id.* ¶ 15. Also, the affiant asserted that, based on his training and experience, he knew that persons who purchased firearms kept them (as well as records or receipts) at their place of residence. *Id.* ¶ 18. The issuing judge therefore had a substantial basis for concluding that there was a fair probability that evidence relating to the unlicensed sale of firearms would be found at Mr. Jones's residence.

At the very least, Mr. Jones has not presented any evidence to rebut the presumption that the officers acted in good faith reliance on the search warrants. *See United States v. Reed*, 744 F.3d 519, 522 (7th Cir. 2014) (citing *United States v. Leon*, 468 U.S. 897, 921 (1984); *United States v. Miller*, 673 F.3d 688, 693 (7th Cir. 2012)). Thus, even if the search-warrant affidavits failed to establish probable cause, suppression would not be an appropriate remedy here.

### III. Conclusion

For all the foregoing reasons, the Court will deny Mr. Jones's request for a *Franks* hearing and will recommend that his suppression motion be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's request for a hearing pursuant to *Franks v. Delaware*, *see* ECF No. 29, is **DENIED**.

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence, ECF No. 29, be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B), and (C), Fed. R. Crim. P. 59(a) and (b)(2), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any order or recommendation herein, or part thereof, may be filed within fourteen days of the date of service of this Order and Recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2019.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge