# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
     **Plaintiff,**

  v.                                              Case No. 18-CR-128

**RON L. JONES**
     **Defendant.**

## DECISION AND ORDER

Defendant Ron Jones filed a motion to suppress physical evidence seized by law enforcement pursuant to search warrants, along with a request for a Franks hearing. See Franks v. Delaware, 438 U.S. 154 (1978) (permitting a defendant to challenge the veracity of a warrant affidavit). The magistrate judge handling pre-trial proceedings in this case denied a hearing and recommended that the motion to suppress be denied. Defendant objects. I review the denial of a Franks hearing for clear error and the recommended denial of the motion to suppress de novo. See United States v. Lewis, 386 F. Supp. 3d 963, 979 (E.D. Wis. 2019); Fed. R. Crim. P. 59(a), (b).

## I. BACKGROUND

The full factual background is set forth in the magistrate judge's decision. (R. 56 at 1-6.) Neither side has objected to that recitation, which I adopt. I present an abbreviated version of events herein.

On February 13, 2018, a Chicago police commander was shot and killed with a Glock handgun. The ATF traced the Glock to a Wisconsin man, Thomas Caldwell, who was already

under investigation for unlicensed firearms dealing.[1] On February 14, 2018, agents interviewed Caldwell, and he indicated that he "probably" sold the Glock to defendant. Caldwell further indicated that he sold at least 15 firearms to defendant over the past five years.

Agents called defendant at the number Caldwell provided, and defendant agreed to speak with them the following day. On February 15, during a meeting at a local police station, defendant admitted acquiring guns from Caldwell, including at least one Glock, but he could not recall the model or caliber. He further indicated that he likely sold the Glock on "armslist.com."

On February 16, 2018, law enforcement executed a search warrant at defendant's residence, seizing guns, ammunition, marijuana, and electronic devices. A few days later, officers obtained and executed a warrant to search the seized electronic devices.

In March 2018, law enforcement began working with a confidential informant ("CI") who indicated that he previously engaged in drug and firearm deals with defendant. The CI subsequently made controlled buys from defendant: of firearms on April 10 and May 16, 2018, and marijuana on April 20 and May 30, 2018. On June 5, 2018, law enforcement executed another warrant at defendant's residence, seizing a computer, marijuana, drug paraphernalia, and cash.

On June 12, 2018, a grand jury in this district returned an indictment charging defendant with possessing a firearm as an unlawful drug user, 18 U.S.C. § 922(g)(3), based on a gun seized during the February 16, 2018 search, and two counts of marijuana distribution, 21

---

[1] In December 2015, the ATF served Caldwell with a "warning letter" regarding his activities, but he continued to purchase and sell firearms without a license, and the ATF resumed its investigation of him in November 2017.

U.S.C. §§ 841(a)(1), (b)(1)(D), based on the April 20 and May 30, 2018, controlled buys. Defendant filed a motion to compel discovery, seeking police records related to the Chicago shooting and Caldwell's mental health records. He argued that he needed the former in support of a possible vindictive prosecution claim, as he believed the police targeted him due to his uncooperativeness in the murder investigation, and the latter in support of a possible challenge to the search warrant(s), which were based in part on Caldwell's information. The magistrate judge denied that motion, and I upheld his order.

As indicated, defendant also filed a motion to suppress the physical evidence seized pursuant to the search warrants, arguing that the warrants were facially invalid and failed to establish probable cause. (R. 29 at 1.) He further requested a Franks hearing, arguing that the warrant affidavit omitted critical information. (R. 29 at 2.) The magistrate judge rejected these arguments.

## II. DISCUSSION

**A.     Search Warrants**

A defendant seeking suppression of evidence obtained pursuant to a search warrant faces an uphill battle. United States v. McKinney, 919 F.2d 405, 427 (7th Cir. 1990). The reviewing court gives great deference to the issuing judge's probable cause determination so long as the judge had a substantial basis for the finding. United States v. Adams, 934 F.3d 720, 725 (7th Cir. 2019). Probable cause exists when the circumstances indicate a reasonable probability that evidence of crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary. Id.

Where, as here, an affidavit is the only evidence presented to the issuing judge, the

validity of the warrant rests solely on the strength of the affidavit. Id. Where the affidavit relies on information provided by an informant, the court considers whether the informant acquired knowledge of the events through firsthand observation, the detail and specificity of the information provided by the informant, the interval between the date of the events described and the officer's application for the warrant, and the extent to which law enforcement corroborated the informant's statements. Id. None of these factors is determinative, and a deficiency in one factor may be compensated for by a strong showing in another or another indicator of reliability. United States v. Carson, 582 F.3d 827, 832 (7th Cir. 2009).

If the court finds the warrant invalid, it must then determine whether the executing officers could have relied in "good faith" on the issuing judge's finding of probable cause. See United States v. Leon, 468 U.S. 897, 924 (1984). The officers' decision to obtain a warrant is prima facie evidence that they were acting in good faith. United States v. Searcy, 664 F.3d 1119, 1124 (7th Cir. 2011). A defendant can rebut the presumption of good faith only by showing (1) that the issuing judge abandoned his or her detached and neutral role, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officers' belief in its existence entirely unreasonable. Id.

## B. Franks Hearings

Although a search warrant will ordinarily stand or fall based on the information set forth in the affidavit, and there is a presumption of validity with respect to the affidavit, a defendant may in some circumstances challenge the veracity of the affidavit through an evidentiary hearing. See Franks, 438 U.S. at 171. In order to obtain a so-called Franks hearing, the defendant must make a substantial preliminary showing that the police procured the warrant with intentional or reckless misrepresentations in the warrant affidavit and that such statements

4

were necessary to a finding of probable cause. United States v. Bell, 925 F.3d 362, 372 (7th Cir. 2019). Evidence will be suppressed under Franks only if (1) the affidavit contained material false statements or omissions, (2) these false statements or omissions were made with deliberate or reckless disregard for the truth, and (3) these false statements or omissions were necessary to a finding of probable cause. United States v. Hansmeier, 867 F.3d 807, 813 (7th Cir. 2017).

**C.    Analysis**

Before the magistrate judge, defendant argued that the affidavit in support of the first search warrant omitted material information about Caldwell, including that Caldwell kept no records of the alleged sale of the Glock to defendant (R. 30 at 7); that Caldwell sold numerous guns, including weapons later involved in criminal activity, after receiving the ATF warning letter (R. 30 at 7-9); that Caldwell suffered from mental health problems (R. 30 at 9); and that Caldwell initially told agents he sold the Glock to a man called "Phil." (R. 30 at 9-10.) Defendant further argued that the second and third search warrants were tainted because they "bootstrapped" the Caldwell information and relied on evidence obtained from the first (unlawful) search.[2]  (R. 30 at 5-7, 11.)

The magistrate judge rejected these contentions, and I agree with his analysis. First, contrary to defendant's argument, the affidavit for the first search warrant did disclose Caldwell's continued illegal arms trafficking after receiving the warning letter. (R. 56 at 11,

---

[2]Defendant also claimed, in the suppression motion and in his previous motion for discovery, that law enforcement learned of the CI through the February 2018 search of his phone and then enlisted the CI to help set up defendant because he did not admit purchasing the murder weapon. (R. 30 at 6.) The government has denied this allegation, indicating that it was actually the CI who approached law enforcement with information about defendant. (R. 46 at 2.)

5

citing R. 30-1 at 3-4 ¶¶ 8-9.) That it did not discuss all of the details of Caldwell's crimes does not defeat probable cause. See United States v. Taylor, 471 F.3d 832, 840 (7th Cir. 2006) (holding that omission of details about informant's criminal background did not detract from finding of probable cause).

Second, defendant presented no evidence that the affiant knew about Caldwell's alleged mental health problems at the time he applied for the warrant. Rather, in making this argument defendant relied on statements Caldwell made some seven months later, during a September 2018 plea hearing after he had been charged with selling firearms without a license.[3] (R. 56 at 12.) The focus of a Franks motion is what the affiant knew at the time of the application, not information uncovered long after the warrant was executed. See United States v. Spears, 673 F.3d 598, 606 (7th Cir. 2012).

Third, the magistrate judge correctly concluded that the other omitted information would not affect the probable cause determination. While Caldwell indicated that he knew defendant by another name, he identified defendant by photograph and provided a phone number, which agents were able to confirm belonged to defendant. (R. 56 at 12.) Caldwell's information was further corroborated by defendant's own statement to the agents, in which he admitted acquiring firearms, including a Glock, from Caldwell. While the agents were not able to definitively establish through records or statements that Caldwell sold defendant the Glock used to murder the Chicago police commander, that level of certainty is not required in order to obtain a warrant to search for evidence of crime. See Adams, 934 F.3d at 725. The affidavit

---

[3]The government notes that, while Caldwell mentioned issues with his memory and mental health during the colloquy, no one questioned his competency to plead guilty. (R. 58 at 7-8.)

clearly established that evidence of Caldwell's unlicensed firearm dealing would probably be found in defendant's residence. (R. 56 at 13.)

Finally, the magistrate judge concluded that the warrant affidavits were otherwise sufficient to establish probable cause that evidence of unlawful firearm sales between Caldwell and defendant would be found in defendant's residence. At the very least, the magistrate judge concluded, the agents could have relied in good faith on the issuing court's probable cause determination. (R. 56 at 14.)

In his objections, defendant argues that the magistrate judge's conclusion that he failed to make a substantial preliminary showing under Franks was erroneous. (R. 57 at 1.) He first complains that the denial of his previous discovery motion impeded his ability to demonstrate that the affiants were aware of Caldwell's mental limitations. (R. 57 at 2.) However, defendant provides no reason to believe that any "interdepartmental communications" – presumably between Chicago police and the ATF – would reveal knowledge of Caldwell's mental limitations. Nor does he demonstrate that the agents had access to Caldwell's medical records. And, as I indicated in reviewing the previous order denying the discovery motion, there is no authority for requiring the government to obtain releases for an informant's mental health records for use in a pre-trial motion, such as a challenge to a search warrant. (R. 48 at 8, citing United States v. Hach, 162 F.3d 937, 947 (7th Cir. 1998) (rejecting claim that the government was required to procure release for a witness's medical records); United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987) (noting that the government is generally not required to disclose information about confidential informants for use in a Franks motion).)

Defendant concedes that the affiant described Caldwell's illegal firearm sales, but he reiterates his claim that nothing was said about Caldwell's psychiatric impairments. (R. 57 at

2.) As indicated, however, the issue is not whether the affiant omitted information the issuing judge may have found relevant; rather, the focus is on the affiant's state of mind. United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000). In the context of omissions, the defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990). Defendant fails to do so here.

Defendant next summarizes the magistrate judge's findings regarding corroboration and facial sufficiency before arguing, in conclusory fashion, that the affidavit did not support a finding of probable cause. (R. 57 at 2.) Such generalized objections, absent specific legal authority, are insufficient to justify rejection of a well-reasoned magistrate recommendation. See United States v. O'Neill, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998). Most significantly, defendant fails to grapple with the fact that, even if Caldwell's credibility would have been diminished by the inclusion of information about his mental problems, defendant's own statements to the agents corroborated the key portions of Caldwell's story. The affiant indicated that in his experience persons who purchase firearms commonly maintain those firearms, as well as records or receipts pertaining to the firearms, at their place of residence. (R. 30-1 at 7 ¶ 18.) And courts have acknowledged that unlike, say, drugs or cash, firearms are likely to remain in a suspect's possession. See United States v. Harju, 466 F.3d 602, 608 (7th Cir. 2006).

Finally, defendant argues that if the warrant is found invalid good faith cannot save its execution. He indicates that, if it could have been demonstrated through discovery that the affaints were aware of Caldwell's mental health issues, they could not avail themselves of the Leon exception. (R. 57 at 2.) Defendant's discovery motion has been considered and denied,

8

defendant provides no basis for revisiting that decision, and he makes no further attempt to rebut the presumption of good faith.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's objection (R. 57) is overruled, the magistrate judge's recommendation (R. 56) is adopted, and the motion to suppress (R. 29) is denied.

**IT IS FURTHER ORDERED** that this matter is scheduled for **STATUS** on **Tuesday, November 5, 2019, at 11:15 a.m.**

Dated at Milwaukee, Wisconsin, this 17th day of October, 2019.

s/ Lynn Adelman
LYNN ADELMAN
District Judge